**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

NEILL SAMUELL,

    Plaintiff,

v.

DOMINICK CIPRIANO, *et al.*,

    Defendants.

3:14-cv-00056-MMD-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court are two motions for summary judgment, one filed by defendants Dominick Cipriano ("Cipriano"), Brian Fortner ("Fortner"), and Joshua Taylor ("Taylor") (#60) and the other by defendant Melody Molinaro ("Molinaro") (# 59). Also before the court are plaintiff's oppositions to the motions (#s 66/67) and defendants' replies (#s 68/69). Having thoroughly reviewed the record and papers, the court recommends that Cipriano, Fortner, and Taylor's motion for summary judgment be denied, and Molinaro's motion be granted.

    **I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    Neill Samuell[1] ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Plaintiff is presently incarcerated at Ely State Prison, but the alleged events giving rise to this case principally occurred during plaintiff's arrest and subsequent detention at the Clark County Detention Center ("CCDC"). Acting *pro se*, plaintiff filed a complaint on January 27, 2014, asserting several civil rights claims against Las Vegas Metropolitan Police Department ("LVMPD") and CCDC officials, a public defender, and a defense investigator (#5).

    On April 30, 2014, the District Court screened the complaint pursuant to 28 U.S.C. § 1915A (#4). Plaintiff was permitted to proceed on two claims against defendants in their individual

---

[1] While at CCDC plaintiff went by the name "Fred Wilson." (#59-3 at 51, 99.)

-1-

capacities. (#4 at 6–7.) First, in "overlapping claims in multiple counts," plaintiff stated a claim for excessive force under the Fourth Amendment against LVMPD officers Cipriano, Fortner, and Taylor. (#4 at 5.) Second, plaintiff successfully pled Eighth and Fourteenth Amendment deliberate indifference against Cipriano, Fortner, and Taylor, and against Melody Molinaro ("Molinaro"), the CCDC Heath Services Administrator. (*Id.*) The District Court dismissed plaintiff's remaining claims, finding that plaintiff's challenges to the legality of his arrest and the search of his apartment, and his claims against the public defender and defense investigator, were barred by the Supreme Court's holding in *Heck v. Humprhey*, 512 U.S. 477 (1994). (*Id.* at 5–6.) In addition, plaintiff had failed to state a cognizable claim regarding the alleged loss of nonevidentiary property or any verbal harassment, abuse, or disrespect he had suffered. (*Id.* at 6.) Plaintiff was given leave to amend the complaint and cure the deficiencies, but failed to file an amended complaint that complied with the local rules. (#28.) Accordingly, only the excessive force and deliberate indifference claims remain in this action.

Plaintiff's claims against defendants Cipriano, Fortner, and Taylor are grounded in the circumstances of his arrest on January 27, 2012, when the three officers went to plaintiff's apartment without an arrest or search warrant. (#4 at 3.) After defendants announced themselves, plaintiff opened the door and, he alleges, was "physically grabbed and pulled outside the apartment in his boxer shorts" by Officer Cipriano, "with Officers Fortner and Taylor as back up." (*Id.* at 3, 5.) Cipriano then twisted plaintiff's wrist and arm to handcuff him. (*Id.* at 5.) Plaintiff maintains that because there was no need for the officers to use any force, Cipriano's handcuffing technique violated his constitutional rights. (#67 at 4.)

Defendants told plaintiff that he was being taken in for questioning. (#5 at 3A.) Before leaving the apartment, plaintiff asked to bring a handful of items with him to the police department, including his cell phone, prescription eye glasses, eye medication, money, and jewelry. (#5 at 3A.) Plaintiff had previously been incarcerated at High Desert State Prison ("HDSP") and, while there, he was diagnosed with glaucoma and prescribed eyeglasses and eye drops. (#59 at 4–5.) Plaintiff contends that Cipriano, Fortner, and Taylor "made the conscious decision to deny plaintiff's request

to take his prescription eye glasses and prescribed eye drop medication for the eye disease of glaucoma, thereby causing [him] severe pain and worsening of the condition of his failing eyesight, which violated [his] Eighth Amendment right." (#4 at 6A.)

The events giving rise to plaintiff's claim against defendant Molinaro occurred at CCDC, where plaintiff was detained from that day forward. During an initial medical screening and nurse examination, plaintiff stated that he was not currently taking any medications, had not been prescribed any medications, and had not been diagnosed with any medical problems. (#59-3 at 52, 79.) Approximately two months later, on March 30, 2012, plaintiff submitted a medical kite to request eyeglasses and an eye exam, as he was having a hard time seeing. (#66 at 6, 14.) Plaintiff was told that he could obtain reading glasses from the commissary or the chaplain. (*Id.* at 7, 14.) On April 1, plaintiff submitted a second kite to ask for glasses, adding that he had been diagnosed with glaucoma, he was unable to bring his glasses when he was arrested, and his eyesight was getting worse. (*Id.* at 16–17.) The responding nurse identified three options available to plaintiff: have a family member bring his pair from home, pay $325 to see an eye doctor, or obtain non-prescription glasses from the commissary. (*Id.* at 16.)

On April 4, plaintiff submitted a grievance regarding his eye condition, indicating for the first time that he had received eye care while at HDSP. (*Id.* at 19.) He noted that reading glasses from the chaplain helped him read and write, but he was having "great difficulty seeing things five feet away." (*Id.*) Moreover, he had no family who could bring him his glasses from home, nor any money to pay for treatment. (*Id.*) Nurse Mitchel responded on April 7, and asked that plaintiff sign a release to allow them obtain his records from NDOC. (*Id.*) Plaintiff's release was faxed on April 10. (#59-3 at 100.) Three weeks later, on April 30, plaintiff submitted a kite to inquire about the records. (#66 at 27.) Defendant Molinaro replied on May 14 that HDSP had not responded, and asking plaintiff to sign an additional release. (*Id.*) Notably, this was the first and only grievance of plaintiff's for which Molinaro was the responding official.

On July 2, Dr. Raymond Mondora examined plaintiff at sick call and referred him to a specialist. (#59-3 at 115–16.) Plaintiff saw Dr. Rudy Manthei at University Medical Center

1  ("UMC") approximately two weeks later, on July 17.  (*Id.* at 122.)  Dr. Manthei noted that plaintiff
2  had been diagnosed with glaucoma years before, and had run out of eye drops one year prior to the
3  appointment; he diagnosed plaintiff with glaucoma and blurred vision, prescribed eye drops, and
4  recommended a follow up appointment.  (*Id.* at 122, 124.)  Dr. Mondora subsequently wrote plaintiff
5  an order to fill the prescription and to request a follow-up appointment, for which plaintiff returned
6  to the UMC on August 7.  (*Id.* at 69, 129, 134.)

7  On July 27, plaintiff submitted a medical kite stating that the UMC examination had
8  confirmed his eye condition, and that he was in need of prescription glasses—"when will they be
9  provided?"  (#66 at 37.)  Nurse Debra Toti responded on July 30, stating that, as she had told him
10 during a conversation that morning, plaintiff would need to pay $250 to see an optometrist because
11 his glaucoma was a pre-existing condition.  (*Id.* at 131; #59-3 at 68.)  CDC records confirm that
12 Nurse Toti spoke with plaintiff the morning of July 30.  (#59-3 at 68.)  Nevertheless, plaintiff
13 maintains that it was defendant Molinaro with whom he spoke that morning.  (#66 at 3, 39.)
14 Molinaro submits in a declaration that she has no recollection of the conversation, and in fact never
15 spoke directly with plaintiff.  (#59-5 at 2–3.)  On July 30, August 2, and August 3 plaintiff submitted
16 additional grievances requesting eyeglasses, and was again told how he could obtain them.  (#66 at
17 39, 41, 43.)

18 A judgment of conviction was filed against plaintiff in his criminal trial on January 4, 2013,
19 and he was transferred into the custody of NDOC on January 10.  Nurse Sandra Cagle completed his
20 CCDC release summary.  (#59-3 at 2.)  Shortly before his release, on January 7, plaintiff had been
21 examined on sick call and referred to the UMC for a follow-up appointment to address intra-ocular
22 pressure and his long term glaucoma care.  (*Id.* at 165.)  Plaintiff alleges that Molinaro allowed him
23 to be transferred "rather than care for [his] serious medical need" and pay for the expense of
24 treatment.  (#66 at 8.)  Moreover, plaintiff alleges that as "a direct result of being denied proper
25 medical treatment for over a year at the CCDC," he suffered severe headaches and blurred vision
26 over the several months following his transfer.  (*Id.*)

27

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. Where the parties file cross-motions for summary judgment, the court considers each party's evidence in separate determinations, *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011), as the required showings for the parties vary by the ultimate burden of proof. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764,

773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations and quotations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.   DISCUSSION

**A.   Civil Rights Claims Under § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights," *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes,"

*Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

**B.     Excessive Force Claims**

As articulated in the court's screening order, "the overlapping claims in multiple counts that officers twisted plaintiff's wrist and arm while handcuffing him and made him stand outside in boxer shorts in cold weather states a claim for excessive force under the Fourth Amendment." (#4 at 5.) In what can only be characterized as a singular waste of judicial resources, defendants Cipriano, Fortner, and Taylor dedicate thirteen pages of their twenty-five-page motion to claims the screening order dismissed. Meanwhile, they fail to address the excessive force claim at all. Defendants' oversight is particularly frustrating given the court's express order that plaintiff's allegations must be "read liberally" to state a cognizable excessive force claim. (#4 at 5.) Nevertheless, the claim was only brought to defendants' attention once plaintiff alerted them of the omission. (#67 at 4.)

In reply, defendants argue for the first time that summary judgment is proper as to the excessive force issue, for the following reasons: (1) plaintiff's claim is precluded, as it was previously litigated and decided in state court; (2) Cipriano did not use excessive force; (3) if Cipriano used excessive force, he is entitled to qualified immunity; and (4) Fortner and Taylor were not personally involved in any use of force against plaintiff. (#68 at 10–17.) Defendants are too late. A district court need not consider arguments that are first raised in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Even had defendants' arguments been properly raised, the court would nevertheless recommend that summary judgment be denied.

**1.     Plaintiff's excessive force claim is not precluded.**

Under Nevada law, a previously-decided issue will have preclusive effect if that same issue was "actually and necessarily" litigated in a prior case, there was a final ruling on the merits, and there is privity between the parties. *Arduini v. Hart*, 774 F.3d 622, 629 (9th Cir. 2014) (quoting

*Alcantara v. Wal-mart Stores, Inc.*, 321 P.3d 912, 916–17 (Nev. 2014)). In addition, the issue's "actual adjudication must be clear from the record." *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 330 n.9 (9th Cir. 1995).

In an order dated October 25, 2012, the state trial court made a conclusion of law that plaintiff's "verbal basis for suppression was not supported by the evidence and showed no 4th Amendment Search and Seizure Violations." (#60-3, Ex. O at 4.) The accompanying findings of fact are vague and inconclusive. With regard to plaintiff's excessive force allegations, the court stated: "Testimony was received from the police officers that contradicted the Defendant's assertions that he was pulled from his home without a warrant. The testimony represented that the Defendant answered the door, stepped out voluntarily, and was handcuffed." (*Id.* at 2.)

Absent further explanation, it appears entirely plausible that state court's Fourth Amendment decision was focused on the legality of the warrantless search and arrest, rather than the alleged use of force. Because it is not clear from the record that the excessive force issue was actually adjudicated, the court finds no reason to give the earlier determination preclusive effect.

**2.     A reasonable jury could conclude that the force used on plaintiff was excessive.**

Defendants next argue that any force Cipriano used to arrest plaintiff was not excessive under the Fourth Amendment. Citing two Eleventh Circuit cases, they contend that Cipriano employed the "common and ordinarily accepted method of applying hand cuffs," which "clearly does not constitute excessive force." (#68 at 15 (citing *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000); *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002)).) In addition, "by definition some force is required to effect a seizure," and the minor pain and injuries plaintiff suffered, while not dispositive, suggest that there was no constitutional violation. (*Id.* at 14.)

The Fourth Amendment guarantees individuals the right "to be secure in their persons . . . against unreasonable searches and seizures," and so prohibits police officers from using excessive force to effectuate an arrest. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989) (quoting U.S. Const. amend. IV). Excessive force claims are evaluated under an objective reasonableness standard. *Id.* at 395. To determine whether the force used was reasonable, a reviewing court must balance "'the

nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Tolan v. Cotton*, — U.S. —, 134 S. Ct. 1861, 1865 (2014) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment . . . should be granted sparingly." *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002).

In carrying out the reasonableness inquiry, the factfinder measures the gravity of the Fourth Amendment intrusion according to the type and amount of force used, as well as the injury sustained. *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994); *Santos*, 287 F.3d at 853–54. Meanwhile, the governmental interest is evaluated by the severity of the crime at issue, whether the suspect poses an immediate safety threat to the officers or others, and whether the suspect resists arrest. *Chew*, 27 F.3d at 1440 (citing *Graham*, 490 U.S. at 396). Of these, the threat to the officers' or others' safety is "the most important single element." *Mattos v. Agarano*, 661 F.3d 433, 445 (9th Cir. 2011).

The Ninth Circuit has previously held that abusive or overly-tight handcuffing may violate the Fourth Amendment. *See, e.g.*, *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (finding summary judgment to be inappropriate where a police officer grabbed the plaintiff by her arms, threw her to the ground, and twisted her arms to handcuff her); *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (finding summary judgment inappropriate where officer grabbed, bent, and twisted plaintiff's arm, smashed plaintiff' face into the police car, and fastened the handcuffs too tight); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (finding summary judgment inappropriate where officer injured plaintiff's wrist and arm in the process of handcuffing). Although the plaintiffs in such cases often suffered a demonstrable injury, or their complaints of pain were ignored by police officers, *Hupp v. City of Walnut Creek*, 389 F. Supp. 2d 1229, 1232–33 (N.D. Cal. 2005) (collecting cases), the law clearly states that the injury suffered is just one of the factors for consideration.

Applying the *Graham* factors, and viewing the evidence in the light most favorable to plaintiff, the court cannot say as a matter of law that the force with which plaintiff was handcuffed

was reasonable. The type and amount of force is disputed by the parties. Defendants describe "a typical handcuffing technique" (#68 at 15), while plaintiff states in a declaration that Cipriano grabbed his wrist, pulled him out of the apartment, and bent and twisted his arm upward in a manner that "caus[ed] a great amount of pain" and could have broken his arm. (#66 at 112.) Critically, there does not appear to have been any compelling governmental interest necessitating the use of force. It is undisputed that plaintiff was accused of fraud, a nonviolent offense; plaintiff opened his door wearing just boxer shorts, suggesting that he was not armed and posed no immediate threat to the officers' safety; and plaintiff did not try to flee or resist arrest. (#67 at 5–6; #60 at 4–5.) Because a reasonable jury could conclude that Cipriano used an excessive amount of force, he is not entitled to summary judgment.

### 3.    Cipriano is not shielded by qualified immunity.

Defendants maintain that, even if Cipriano used excessive force to handcuff plaintiff, plaintiff "has not and cannot pierce Officer Cipriano's immunity from suit." (#68 at 15.) Qualified immunity, where applicable, shields public officials from civil damages liability. *Taylor v. Barkes*, –– U.S. —, 135 S. Ct. 2042, 2044 (2015). The doctrine is more than a "mere defense," and acts as "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether a public official is entitled to the doctrine's protection, a reviewing court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42. Here, the court has already concluded that the facts alleged, viewed in the light most favorable to plaintiff, show a violation of plaintiff's Fourth Amendment rights. The first step satisfied, the court proceeds to step two. *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000) (observing that "the test for qualified immunity in excessive force cases is the same as the test on the merits").

Whether a constitutional right was clearly established is an objective inquiry, turning on whether a reasonable official in the defendant's position should have known at the time that his conduct was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The precise act need not have previously been held unlawful, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 135 S. Ct. at 2044 (internal quotation omitted). Therefore, the court must assess qualified immunity "'in light of the specific context of the case.'" *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)).

"[T]he use of excessive force by officers in effecting an arrest was clearly proscribed by the Fourth Amendment at least as early as 1985." *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993). Accordingly, the Ninth Circuit ruled in 1993 that police officers did not enjoy qualified immunity on a motion for summary judgment, where the officers had fastened handcuffs so tightly that plaintiff's bruises that lasted several weeks. *Id.* Other instances of abusive handcuffing have similarly prompted the Ninth Circuit to find a potential Fourth Amendment violation, particularly where the suspect posed no threat to the safety of the officers or others. *See Hansen*, 885 F.2d at 645; *Meredith*, 342 F.3d at 1061; *Wall*, 364 F.3d at 1112. Given this circuit's precedent and the circumstances of plaintiff's arrest, plaintiff has raised a triable issue of fact as to whether a reasonable officer in Cipriano's position would have known that his conduct transgressed a constitutional boundary. Qualified immunity is therefore unavailable to shield Cipriano from plaintiff's claim.

**4.     Taylor and Fortner are not entitled to summary judgment.**

Finally, defendants contend that because Taylor and Fortner did not place plaintiff in handcuffs, and had no realistic opportunity to intervene in the arrest, they are entitled to summary judgment as to any excessive force claims. "Liability under §1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Police officers do, however, "have a duty to intercede when their fellow officers violate the constitutional rights of a suspect." *Cunningham*, 229 F.3d at 1289 (internal quotation omitted). Officers who are

present and passive while a fellow officer uses excessive force may therefore be liable if they had a realistic opportunity to intercede and failed do so. *Id.* at 1289–90. In addition, some courts in this circuit have applied the "integral participant" theory to excessive force claims, under which an officer may be liable if fundamentally involved in the conduct that caused the constitutional violation. *See, e.g.*, *Blackenhorn v. City of Orange*, 485 F.3d 463, 482 n.12 (9th Cir. 2007); *Keane v. McMullen*, 898 F. Supp. 2d 1157, 1169 (N.D. Cal. 2012); *Esteem v. City of Pasadena*, No. CV 04-662-GHK (MANx), 2007 WL 4270360, at *12 (C.D. Cal. Sept. 11, 2007). *But see Carillo v. Las Vegas Metro. Police Dep't*, No. 2:10–CV–02122–KJD, 2011 WL 3300333, at *2 (D. Nev. Aug. 1, 2011) (holding that because "the integral participant theory has not been clearly applied to Fourth Amendment seizure violations," the defendant could not be considered an integral participant for purposes of plaintiff's excessive force claim).

Plaintiff does not specifically describe where Taylor and Fortner were standing when Cipriano grabbed his arm, how long it took Cipriano to place plaintiff in handcuffs, or how Taylor and Fortner could have intervened. In the complaint, plaintiff states simply that Taylor and Fortner acted "as back up" for Cipriano during the arrest. (#4 at 5.) The court notes, however, that as with defendants' other excessive force arguments, plaintiff has not had a chance to respond to defendants' arguments regarding Taylor and Fortner's role. Under the circumstances, the court finds that summary judgment is not appropriate.

C. **Deliberate Indifference Claims**

    1. **Defendants Cipriano, Taylor, and Fortner**

Plaintiff alleges that Cipriano, Taylor, and Fortner were deliberately indifferent to his serious medical need when they refused to allow him to bring his eyeglasses and eye drops with him when they left his apartment. (#5 at 6A.) Defendants Cipriano, Taylor, and Fortner's motion for summary judgment states that defendants "move for summary judgment on all claims for relief against them" (#60 at 1); however, neither their motion nor their reply addresses plaintiff's deliberate indifference claims (*see* #60; #68). In the complete absence of any explanation as to why defendants are entitled to summary judgment, the court finds that their motion with respect to this issue should be denied.

### 2. Defendant Molinaro

Turning to defendant Molinaro, plaintiff maintains that Molinaro acted with deliberate indifference by ordering her staff to deny him medication, refusing to approve the purchase of prescription eyeglasses, and by allowing him to be transferred from CCDC before he received expensive treatment. (#4 at 4; #5 at 6A; #66 at 8.) Defendant Molinaro contends that she is entitled to summary judgment on several grounds, including that plaintiff did not have a serious medical need, that Molinaro neither knew of plaintiff's condition nor acted indifferently, and that plaintiff did not suffer any harm as a result of the allegedly indifferent actions. (#59 at 3.) Although the court disagrees with Molinaro's portrayal of plaintiff's eye condition, the court finds that the plaintiff has not provided any evidence from which a jury could reasonably find that Molinaro knew of plaintiff's serious medical need. Because plaintiff has not met his burden, Molinaro's motion should be granted.

As alleged, the events giving rise to plaintiff's deliberate indifference claim primarily occurred after plaintiff was booked at CCDC on January 27, 2012, but before January 4, 2013, the date a judgment of conviction was filed against him in his criminal case. For this interim period, plaintiff's constitutional rights regarding his medical needs are analyzed under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). The Fourteenth Amendment protects pretrial detainees from conditions of confinement which amount to punishment. *Id.* at 536–37. To the extent that the alleged violations continued post-conviction, the source of plaintiff's rights arise instead under the Eighth Amendment's prohibition on cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Whichever amendment is implicated, however, the court uses the same analytical framework. *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Under the Eighth or Fourteenth Amendment, corrections facility officials violate an inmate's constitutional rights by acting with deliberate indifference to their serious medical needs. *Estelle*, 429 U.S. at 104; *Simmons*, 609 F.3d at 1017. Claims are analyzed under a two-prong test, composed of an objective and a subjective element: a plaintiff must show (1) that he or she had a serious

1  medical need, and (2) that the defendant was "deliberately indifferent" to that need. *Jett v. Penner*,
2  439 F.3d 1091, 1096 (9th Cir. 2006).

3  A serious medical need exists when, viewed objectively, the state's failure to provide
4  treatment "'could result in further significant injury or the unnecessary and wanton infliction of
5  pain.'" *Id.* (quoting *Estelle*, 429 U.S. at 103). Signs that a need is serious include "an injury that a
6  reasonable doctor or patient would find important and worthy of comment or treatment; the presence
7  of a medical condition that significantly affects an individual's daily activities; or the existence of
8  chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

9  Deliberate indifference, in contrast, considers the defendant's state of mind and the injury
10  plaintiff suffered. "Prison officials are deliberately indifferent to a prisoner's serious medical needs
11  when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296
12  F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, an official may only be held
13  liable if "he or she 'knows of and disregards an excessive risk to inmate health or safety; the official
14  must be both aware of facts from which the inference could be drawn that a substantial risk of
15  serious harm exists, and he [or she] must also draw the inference.'" *Simmons*, 609 F.3d at 1017
16  (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). An "accidental or unintentional" failure to
17  provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105. Rather, the
18  standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at
19  the other . . . ." *Farmer*, 511 U.S. at 836. Finally, the plaintiff must also prove that he was harmed
20  by the indifferent actions, though the harm need not be substantial. *Jett*, 439 F.3d at 1096.

21  Viewing the evidence in the light most favorable to plaintiff, his glaucoma was a serious
22  medical need. As Molinaro argues, plaintiff did not file a formal complaint regarding his eye
23  condition until he had been at CCDC for nearly two months. (#59 at 15.) However, plaintiff
24  suffered from more than mere nearsightedness (*see id.*)—he was diagnosed with glaucoma prior to
25  his detention, and the diagnosis was confirmed on several occasions. Glaucoma, which can cause
26  permanent vision loss or blindness, is a condition that a reasonable doctor would find worthy of
27

comment and treatment. *Colwell*, 763 F.3d at 1066; *see also Byrd v. Shannon*, 715 F.3d 117, 127 (3rd Cir. 2013) (characterizing glaucoma as a serious medical condition).

However, plaintiff's claim fails at the second prong of the deliberate indifference analysis. Because there is no respondeat superior liability under § 1983, Molinaro is only liable if she participated in or directed the constitutional violations, or knew they were occurring and failed to step in. *Taylor v. List*, 880 F.3d 1040, 1045 (9th Cir. 1986). Although plaintiff alleges that Molinaro was "personally aware of plaintiff's need for medical treatment" and "made the conscious decision to do nothing," he has not presented sufficient evidence to suggest that was the case. (#66 at 4, 92.)

As the CCDC Health Services Administrator, treating inmates and responding to kites or grievances was not part of Molinaro's typical duties. (#59-5 at 2.) She did not treat plaintiff while he was at CCDC, nor did she "make any determinations about what medical care [he] specifically would or would not receive." (*Id.*) Beyond plaintiff's conclusory allegations regarding her oversight of the medical staff, plaintiff presents no evidence to the contrary. Molinaro responded to plaintiff's grievances on just one occasion, April 30, 2012; the grievance concerned the release of his medical records from HDSP, and did not specifically describe his eye condition. (#66 at 25.) The only other contact plaintiff alleges having with Molinaro is the July 30, 2012 conversation, in which a female nurse told plaintiff that CCDC would not provide him prescription eyeglasses free of charge. (*Id.* at 92.) As the July 30 kite response, the CCDC records, and Molinaro's declaration all indicate that the conversation was instead with Nurse Toti, plaintiff's insistence alone is not enough to stave off summary judgment. (#66 at 131; #59-3 at 68; #59-5 at 1–2.) Finally, CCDC records indicate that Nurse Sandra Cagle—not Molinaro—completed plaintiff's CCDC release summary (#59-3 at 2), and plaintiff presents no evidence to support his claim that it was within Molinaro's authority to prevent or authorize his transfer (#66 at 4, 8).

The court also notes that, while plaintiff did not receive prescription eyeglasses until May 2013, after he had been transferred to Ely State Prison, he did receive treatment for his glaucoma while at CCDC. (#59-7 at 3.) Dr. Mondora and Dr. Manthei prescribed eye drops, which plaintiff

received. The records to not indicate whether either doctor prescribed plaintiff glasses, or that they told him they were necessary to treat his condition. Treatment that is "not as prompt or efficient as a free citizen might hope to receive" does not amount to deliberate indifference, so long as the medical care received addresses an inmate's serious needs. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Moreover, it seems that plaintiff's belief that he needed prescription eyeglasses to treat his glaucoma may be characterized as a "difference of opinion between a prisoner-patient and prison medical authorities regarding treatment . . . ." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Such a dispute, however, does not give rise to a claim under § 1983. *Id.*

In sum, plaintiff's conclusory allegations regarding Molinaro's personal involvement do not raise a genuine issue of material fact. Because plaintiff has not made the requisite showing that Molinaro had any knowledge of his condition, the court recommends that Molinaro's summary judgment motion be granted.

## VI. CONCLUSION

Based upon the foregoing, the court concludes that defendants Cipriano, Fortner, and Taylor are not entitled to summary judgment on plaintiff's excessive force or deliberate indifference claims. Plaintiff has raised genuine issues of material fact as to whether the amount of force used in his arrest was permissible, and, further, defendants improperly addressed the claim in their reply instead of their motion for summary judgment. With regard to plaintiff's deliberate indifference claim, summary judgment is inappropriate because defendants failed to address the claim altogether.

Conversely, the court finds that defendant Molinaro is entitled to summary judgment. Plaintiff failed to present evidence showing that Molinaro knew of and disregarded his serious medical need, as is required to prevail on an Eighth or Fourteenth Amendment deliberate indifference claim.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and

Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### VII. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants Cipriano, Taylor, and Fortner's motion for summary judgment (#60) be **DENIED** in its entirety;

**IT IS FURTHER RECOMMENDED** that defendant Molinaro's motion for summary judgment (#59) be **GRANTED** in its entirety.

**DATED:** November 4, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**