UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NEILL SAMUELL,<br><br>　　　　　　　　　Plaintiff,<br>　v.<br>DOMINICK CIPRIANO, et al.,<br>　　　　　　　　　Defendants. | Case No. 3:14-cv-00056-MMD-VPC<br><br>ORDER ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE VALERIE P. COOKE |

**I.    SUMMARY**

Before the Court is the Report and Recommendation of United States Magistrate Judge Valerie P. Cooke (dkt. no. 70) ("R&R") relating to Defendants Dominick Cipriano, Brian Fortner, and Joshua Taylor's ("Officer Defendants") motion for summary judgment ("Officer Defendants' Motion") (dkt. no. 60) and Defendant Melody Molinaro's ("Molinaro") motion for summary judgment ("Molinaro's Motion") (dkt. no. 59). Plaintiff and the Officer Defendants filed objection to the R&R (dkt. nos. 71, 72). The Officer Defendants subsequently supplemented their objection to include an affidavit to authenticate exhibits attached to their objection. (Dkt. no. 74.)

**II.    RELEVANT BACKGROUND**

This case involves alleged conduct arising in connection with Plaintiff's custody at the Clark County Detention Center ("CCDC") for about a year period between January 27, 2012, and January 2013. (Dkt. no. 5.) After a preliminary screening of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A(b), the Court permitted Plaintiff to proceed on two claims against Defendants in their individual capacities for deliberate indifferent to his serious medical needs (as articulated in Count IV) and use of

excessive force, and dismissed the remaining claims without prejudice and with leave to amend. (Dkt no. 4.) Plaintiff did not timely amend his complaint.

The excessive force claim is based on Plaintiff's allegations that the Officer Defendants twisted Plaintiff's wrist and arm while handcuffing him and made him stand outside in boxer shorts in cold weather. (*Id.* at 5.) The deliberate indifference claim is based on Plaintiffs' allegations that (1) the Officer Defendants refused his request to bring his eyeglasses and prescription eye drops for glaucoma with him at the time of the arrest; and (2) Defendant Molinaro ordered the CCDC medical department to deny him glaucoma medication until January 10, 2013, after an outside physician verified his condition and thereafter refused to approve the purchase of prescription eyeglasses. (*Id.* at 4-5.) Molinaro was the CCDC's Health Service Administrator. (Dkt. no. 59-5 at 2.)

### III. LEGAL STANDARD

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). In light of the parties' objections, the Court has engaged in a *de novo* review to determine whether to adopt Magistrate Judge Cooke's recommendations.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am. NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

///

///

## IV. DISCUSSION

### A. The Officer Defendants' Motion

The Magistrate Judge recommends denying the Officer Defendants' Motion with respect to Plaintiff's deliberate indifference claim because their briefs do not address this claim. The Officer Defendants ask the Court to permit them to raise arguments in support of summary judgment on this claim for the first time in their objection. The Court has discretion, but is not required, to consider new arguments raised for the first time in a party's objection to a magistrate judge's ruling." *Brown v. Roe,* 279 F.3d 742, 7444-46 (9th Cir. 2002). The Officer Defendants offer no good reason for their failure to raise their arguments in their Motion, particularly when they presented arguments on claims that did not survive screening.[1] As the Magistrate Judge correctly noted, "[i]n what can only be characterized as singular waste of judicial resources, defendants Cipriano, Fortner, and Taylor dedicate thirteen pages of their twenty-five page motion to claims the screening order dismissed." (Dkt. no. 70 at 7.) Accordingly, the Court denies the Officer Defendants' request to consider arguments that they failed to raise in their Motion or even reply brief.

The Magistrate Judge recommends denying summary judgment on the excessive force claim against Defendants Taylor and Fortner because they did not raise any arguments with respect to these two Defendants in their Motion, thus denying Plaintiff, who is proceeding *pro se*, the opportunity to respond. Because Defendants Taylor and Fortner did not properly assert their arguments to support their request for summary judgment, the Court declines to address their late asserted arguments in their objection. With respect to Cipriano, the Magistrate Judge

---

[1] The Officer Defendants noted that the Magistrate Judge addressed the claims based upon the screening order entered after they made their appearance in this case. (Dkt. no. 72 at 4.) The fact that the screening order was issued before the Officer Defendants appeared in the case does not excuse their failure to address only the claims that survive screening. In fact, the Court is compelled to conduct a preliminary screening of Plaintiff's complaint, before a response is filed, to alleviate the need for Defendants to respond to claims that are not legally cognizable. *See* 28 U.S.C. § 1915A(a).

4

1  recommends denying summary judgment because a genuine issue of material fact
2  exists as to whether he is entitled to qualified immunity. While the Officer Defendants
3  only argue qualified immunity for the first time in their reply brief, the Court will address
4  their arguments because the Magistrate Judge did consider these arguments in
5  making her recommendations.

6     Where a plaintiff has stated a valid cause of action under § 1983, government
7  officials sued in their individual capacities may raise the affirmative defense of qualified
8  immunity, which Capriano has invoked here. *See Spoklie v. Montana*, 411 F.3d 1051,
9  1060 (9th Cir. 2005). To determine whether an individual officer is entitled to qualified
10 immunity, a court must make a two-step inquiry: (1) whether the facts shown make out
11 a violation of a constitutional right; and (2) if so, whether the constitutional right was
12 clearly established as of the date of the alleged misconduct.  *Pearson v. Callahan*, 555
13 U.S. 223, 232 (2009) (citations omitted); *Saucier v. Katz*, 533 U.S. 194, 121 (2001);
14 *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1013 (9th Cir. 2002). The Supreme Court
15 has instructed that district judges may use their discretion in deciding which qualified
16 immunity prong to address first based on the circumstances of the case at issue. *See*
17 *Pearson v. Callahan,* 555 U.S. 223 at 232, 236 (2009). The Court will address both
18 prongs of this test.

19
20     **1.    Was Capriano's use of force unreasonable and in violation of Plaintiff's Fourth Amendment rights?**

21     A claim of excessive force during an arrest is analyzed under the Fourth
22 Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386,
23 395-97 (1989). To determine whether the use of force by a law enforcement officer
24 was excessive under the Fourth Amendment, a court must assess whether it was
25 objectively reasonable "in light of the facts and circumstances confronting [the officer],
26 without regard to their underlying intent or motivation." *Id.* at 397. "Determining
27 whether the force used to effect a particular seizure is 'reasonable' under the Fourth
28 Amendment requires a careful balancing of the nature and quality of the intrusion of

the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). In this analysis, the Court must consider the following factors: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; and (3) whether the plaintiff actively resisted arrest. *Id.*; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001). While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano,* 661 F.3d 433, 441 (9th Cir.2011) (en banc).

The Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for summary judgment. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. County of Riverside,* 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

Plaintiff is permitted to proceed on his excessive force claim based on his allegations that on January 27, 2012, the Officer Defendants went to his apartment and he was "physically grabbed and pulled outside the apartment in his boxer shorts, in very cold weather" and he was "immediately handcuffed when he was snatched out of his apartment." (Dkt. no. 4 at 5; dkt no. 5 at 5.) In his declaration, Plaintiff states that on the early morning hours of January 27, 2012, he was asleep in his bed wearing only a pair of boxer shorts when he heard "repeated banging" at his door. (Dkt. no. 66 at 112.) He put on a pair of house slippers and after he realized the "the Metro police" was knocking on his door, the following occurred:

> That I immediately opened the apartment door and was immediately grabbed by a metro police offer, who I learn[ed] at a later date was Officer Cipriano, who grabbed my wrist, pulled me out of the apartment

6

> while twisting my wrist to turn my body away from him so he could handcuff me, and during this pulling of my wrist, and twisting my arm at the same time and bending it upward, caused a great amount of pain to me and could have broken my shoulder.

(*Id.*)

The Officer Defendants argue that Plaintiff did not testify either at his criminal trial or his deposition in this case that he experienced any pain when Cipriano handcuffed him. (Dkt. no. 72 at 4-5.) However, as the Officer Defendants acknowledge, the absence of physical injury is not dispositive. (*Id.*, citing *Wilkins v. Gaddy,* 559 U.S. 34, 36-37 (2010).)

The Officer Defendants reiterated the general argument that an officer's use of "empty hand techniques to put a suspect into position to be handcuffed and to apply the cuffs" does not amount to excessive force absent unusual circumstances. (Dkt. no. 72.) However, Plaintiff's declaration disputes the Officer Defendants' contention that the sum total of the force use involved placing Plaintiff into position to be handcuffed. Plaintiff asserts that Capriano twisted his wrist "to turn [his] body away from him so [Capriano] could handcuff [Plaintiff], and during this pulling of [Plaintiff's] wrist, and twisting [his] arm at the same time and bending it upward." (Dkt. no. 66 at 112.) Plaintiff contends that he had immediately answered the door when he realized who was knocking during the early morning hours and all he had on was his boxer shorts. (*Id.*) There is no evidence that Plaintiff posed any safety risk when he answered his door wearing only his boxer shorts, or that he attempted to resist arrest. Viewing this evidence and drawing all inferences in the light most favorable to Plaintiff, a rational trier of fact could find that Capriano's use of force in handcuffing Plaintiff — by twisting Plaintiff's body, pulling Plaintiff's wrist and his arm and bending it upward to handcuff him when Plaintiff was not resisting arrest or present any apparent threat as he stood at his door in his boxer shorts — was unreasonable.

The Officer Defendants also cite to Plaintiff's extensive criminal history and subsequent conviction of the charge for which he was arrested and sentenced as a habitual criminal to a life sentence to suggest that the force use — "a more dynamic

7

handcuffing approach" — is reasonable. (Dkt. no. 72 at 14.) While the nature of the crime at issue and whether a plaintiff posed an immediate threat to the safety of the officers or others are factors that should be considered, the Officer Defendants' argument that one's criminal history and subsequent conviction should be considered is tenuous. They fail to offer any authority to support their argument.  In any event, the Court disagrees that the force to be applied in effectuating an arrest should be varied depending on one's status as a "habitual criminal." Moreover, there is no evidence to suggest that Capriano was aware of Plaintiff's criminal history, nor is there any nexus between the reasonableness of the force used and a subsequent conviction of the charge for which Plaintiff was arrested.

The Court agrees with the Magistrate Judge that a material issue of fact exists as to whether Capriano used an unreasonable amount of force in handcuffing Plaintiff and as a result violated his Fourth Amendment rights.

### 2. Was the Fourth Amendment Violation Clearly Established?

The second prong of a qualified immunity analysis requires the Court to determine whether the law, as it existed at the time of the incident, was clearly established. "A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011) (quotation marks and citation omitted). The Supreme Court has cautioned courts "not [to] define clearly established law at a high level of generality." *Id.* at 2084; *see also City & Cnty. of San Francisco v. Sheehan,* ——U.S. ——, ——, 135 S.Ct. 1765 (2015). Yet, it is "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 1997) ("Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct.").

1    In evaluating the second prong, the Court must ask whether a reasonable police officer would have understood that he may not use excessive force in handcuffing a suspect in a manner to cause pain — as he did here where immediately upon seeing the suspect, the officer twisted the suspect's body, pulling his wrist and arm and bending his arm upward to handcuff him — when the suspect was not resisting arrest or posing any apparent security threat. The law is clearly established that such force may not be used under the circumstances presented here.

The Magistrate Judge relied on three Ninth Circuit Court of Appeals' decisions involving abusive handcuffing in determining that the law is clearly established: *Hansen v. Black,* 885 F.2d 642 (9th Cir. 1989); *Meredith v. Erath*, 342 F.3d 1057, 1060 (9th Cir. 2003); and *Wall v. Cnty. of Orange,* 364 F.3d 1107 (9th Cir. 2004). (Dkt. no. 70 at 9.) These cases are particularly instructive on the contours of the law governing placement of handcuffs in connection with an arrest in the absence of any evidence that the person paced in restraint resisted arrest or presented any apparent threat. In *Hansen,* police offers had followed footprints in the snow from a gas station that was robbed to Hansen's residence when she emerged carrying plastic trash bags and walked to the street where a trash truck had stopped to pick up trash. 885 F.2d at 634. The parties offered conflicting versions of what happened next, but Hansen alleged that the officers told her to leave the trash bags on the street, warned her that she would be arrested if she interfered with their attempt to remove the trash from the truck, and she complied. According to Hansen, "when Hansen turned to go into her garage, one of the officers came over and handcuffed her." *Id.* at *645.* Medical records showed that Hansen was treated for injuries as a result of the arrest, "she had bruises on her arm and wrist and under her upper arm" and had "complained of pain in her little finger and upper arm." *Id.* The court affirmed the denial of summary judgment, finding that a factual issue exists as to whether the officers used excessive force in handcuffing Hansen. *Id.* In *Meredith*, the force use involved an IRS agent grabbing Meredith by the arms, "forcibly threw her to the ground, and twisting her arms, placed

handcuffs on her wrists." 342 F.3d at 1060. The court relied on *Hansen* to find that it was clearly established that the amount of force used in handcuffing the plaintiff was excessive. *Id.* at 1061. Finally, in *Wall,* the court relied in part on *Meredith* for the proposition that "overly tight handcuffing can constitute excessive force" in finding that continuing restraint by handcuffs that were tight and that resulted in repeated requests to "loosen the handcuffs" violated clearly established constitutional rights to be free of excessive force. 364 F.3d at 1109-10, 1112.

It is well established through *Hansen, Meredith* and *Wall* that an officer cannot use more force than necessary to restrain a suspect. Here, accepting Plaintiff's version of the facts and drawing all reasonable inferences in his favor, Capriano did just that. Capriano twisted Plaintiff's body, pulling his wrist and arm and bending his arm upward to handcuff him when Plaintiff was not resisting arrest or posing any apparent security risks. (Dkt. no. 66 at 112.) A reasonable officer, having reviewed *Hansen, Meredith* and *Wall,* would not believe it was reasonable to apply more force than necessary to place Plaintiff in handcuffs under these circumstances.[2]

In sum, the Court agrees with the Magistrate Judge and will adopt the recommendation to deny summary judgment to the Officer Defendants.

**B.  Molinaro's Motion**

Plaintiff's claim against Molinaro is for deliberate indifference to his serious medical conditions. This claim requires a plaintiff to satisfy "an objective standard — that the deprivation was serious enough to constitute cruel and unusual punishment —

---

[2]The Officer Defendants cite to this Court's earlier decision in *Lefever v. Nicholson,* case no. 2:10-cv-01917-MMD-PAL, 2013 WL 1068817 (D. Nev. March 2013), where the Court summarized Ninth Circuit case law examining handcuffing. In *Lefever,* the tight handcuffs were placed on Lefever for 8 to 15 seconds, the improperly fastened handcuffs were release upon Lefever's request and no other forms of violence where inflicted. *Id.* at *4. The Court found that the Ninth Circuit recognizes that the right to be free from excessive force in the form of tight handcuffing was clearly established at the time of the incident, and declined to grant summary judgment as to the question of qualified immunity despite being faced with a close question. *Id. See Wall*, 364 F.3d at 1112 (9th Cir. 2004). This case is distinguishable both on the facts and on the Court's determination that the circumstances of the handcuffing here do not present a close call as in *Lefever.*

and [also] a subjective standard — deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012)) (internal citations and quotation marks omitted). "A prison official is deliberately indifferent under the subjective element of the test only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004)).

The Magistrate Judge recommends granting Molinaro's motion because Plaintiff has failed to provide evidence to create a material issue of fact that Molinaro knew of Plaintiff's serious medical needs. (Dkt. no. 70 at 13.) In his objection, Plaintiff argues that he has presented evidence that, viewed in the light most favorable to Plaintiff as the non-moving party, may lead a reasonable jury to find that Molinaro was made aware of his serious medical conditions. (Dkt. no. 71.) In particular, Plaintiff cites to several grievances that were directed to "Health Services Administrator" and would have been submitted to her pursuant to CCDC's policy to enable inmates to direct grievances to a specific department or staff member; and he reiterated that in connection with his July 30, 2012, grievance, Molinaro introduced herself to him as the Health Services Administrator and "was there to see me because of all the grievances I had filed." (*Id.* at 2-3.) The Court agrees with the Magistrate Judge that Plaintiff has failed to offer sufficient evidence to create a triable issue of fact that Molinaro was aware of his medical needs.

Plaintiff relies on several grievances that were submitted to the attention of the "Health Services Administrator" and his contention that in connection with his July 30, 2012, grievance, Molinaro "introduced herself to [him] as the Health Service Administrator, and told me that she was there to see me because of all the grievances that I had filed." (Dkt. no. 71 at 2-3; Exhs. 7, 10, 13, 15, 17 (dkt. no. 66 at 27, 34-35, 41, 46, 50.)) Of the grievances that Plaintiff identifies, Molinaro responded to one — the grievance dated April 30, 2011 (Exh. 7, dkt. no. 66 at 27). That grievance stated that Plaintiff had submitted a medical kite for treatment of his eye condition, had

11

1  requested to be examined and had mentioned that he was treated for "glaucoma"
2  while at High Desert State Prison. (*Id.*) However, the grievance involved the progress
3  of obtaining the release of medical records from the Nevada Department of
4  Corrections ("NDOC"). (*Id.*) Molinaro responded that the records had not been
5  received and directed Plaintiff to complete a release of information. (*Id.*) Viewed in the
6  light most favorable to Plaintiff, the information in the grievance — a statement of his
7  treatment while in NDOC custody to explain the reason for inquiring about the release
8  of medical records from NDOC — does not support Plaintiff's contention that Molinaro
9  knew of his serious medical needs.

10  In support of her motion, Molinaro offered her declaration where she states that
11  she did not have any interaction with Plaintiff other than to respond to his April 30,
12  2011, grievance, and explains that she did not review most of the kites that were filed
13  and responding to the kites was not part of her general job duties. (Dkt. no. 59-5 at 2.)
14  She pointed out that Plaintiff's comment in an August 2012 grievance shows he had
15  not met her by that time: "I was previously told that the name of the person in charge
16  of health services is Melody.  So I say hello to you Ms. Melody."  (Dkt. no 59-3 at 180.)
17  She also offered internal notes showing that Nurse Debra Toti posted a note of her
18  conversation with Plaintiff on July 30, 2012. (*Id.* at 68.) There is no dispute that
19  Molinaro did not respond to the July 30, 2012 grievance. (Dkt. no. 66 at 39.) In light of
20  these undisputed evidence, Plaintiff's contention that Molinaro had introduced herself
21  as the Health Service Administrator in connection with his July 30, 2012, grievance,
22  and was doing so because of the grievances that he had filed, is not sufficient to
23  create a factual dispute.

24  The Court will therefore adopt the Magistrate Judge's recommendation to grant
25  summary judgment in favor of Molinaro.

26  ///
27  ///
28  ///

## V. CONCLUSION

It is therefore ordered, adjudged and decreed that the Report and Recommendation of Magistrate Judge Valerie P. Cooke (dkt. no. 70) is accepted and adopted in its entirety.

It is further ordered that defendants Dominick Cipriano, Brian Fortner, and Joshua Taylor's motion for summary judgment (dkt. no. 60) is denied.

It is further ordered that Melody Molinaro's motion for summary judgment (dkt. no. 59) is granted. The Clerk is directed to enter judgment in favor of Molinaro.

DATED THIS 21st day of March 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE